# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **Michelle Proctor**<br><br>Plaintiff,<br><br>v.<br><br>**CVS Pharmacy Inc.**<br>**Please serve at: CT Corporation System 120 South Centra Ave, Clayton, MO 63105**<br><br>Defendant. | Case No.:<br><br>Division: |

## COMPLAINT

COMES NOW Michelle Proctor ("Plaintiff") by and through her counsel to seek redress for harm suffered as a result of Defendant CVS Pharmacy Inc's ("CVS" or "Defendant") conduct.

## PARTIES

1. Michelle Proctor ("Ms. Proctor") is a currently a resident of North Port, Florida, but was always a resident of Missouri relevant to these claims.

2. Ms. Proctor was born September 20th, 1967, making her 56 years old at the time of this complaint.

3. Ms. Proctor held numerous roles during the 29 years of employment with Defendant. She served her last 11 years as District leader for Defendant.

4. Ms. Proctor was qualified to perform her role with Defendant and performed her duties competently and professionally.

5. Defendant CVS Pharmacy Inc is owned by CVS Health Corporation, a publicly held company founded in 1996. The company has 9,443 CVS Pharmacy locations across the United States and hundreds across Missouri and Kansas as of November 2023.

6. CVS Health Corp. and its subsidiaries, including CVS Pharmacy Inc, acts through its employees and agents, all of whom were acting withing their scope of employment and/or agency during the events described herein.

7. At all times material to this claim the following persons were employed by and acted as agents of Defendant: Lien Rogers ("Rogers"), Regional Manager, Clifford Wright ("Wright"), Regional Manager, and Michael Hidey ("Hidey"), Pharmacist and Emerging Leader.

**JURISDICTION AND VENUE**

8. This lawsuit is brought under Title VII of the Civil Rights Act (Title VII) and Age Discrimination in Employment Act (ADEA) for the discriminatory, harassing, retaliatory, and hostile behavior of Defendant CVS and its employees. This lawsuit is also brought to address Defendant CVS's failure to investigate, address, and eliminate the illegal harassment, discriminatory, retaliatory, and hostile work environment against Plaintiff.

9. Original jurisdiction lies herein pursuant to the statutes listed in paragraph 8 above. Additionally, jurisdiction is proper pursuant to 28 U.S.C.A. §1331. Further, there is complete diversity in this case and the amount in controversy exceeds $75,000 making jurisdiction also proper pursuant to 28 U.S.C.A. §1332.

10. Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and (c) as Defendant CVS does business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

11. All conditions precedent to jurisdiction have occurred and/or been complied with.

12. Plaintiff filed her Charge of Discrimination in a timely manner on or about July 21, 2022, alleging age discrimination, sex discrimination, and retaliation with the Missouri Commission on Human Rights (MCHR") and the Equal Employment Opportunity Commission ("EEOC").

13. A copy of the Charge is attached hereto as Exhibit A.

14. The EEOC provided Plaintiff with her Right to Sue Letter on October 10, 2023, this lawsuit is filed within ninety (90) days of the date on the EEOC letter. A copy of the Right to Sue letter is attached hereto as Exhibit B.

## FACTS COMMON TO ALL COUNTS

15. On February 1st, 2022, Defendant illegally and abruptly ended Ms. Proctor's nearly three-decade long employment with Defendant.

16. Ms. Proctor worked as a District Manager, overseeing numerous stores in her area.

17. Ms. Proctor's duties included but were not limited to overseeing pharmacists in her jurisdiction and ensuring the overall success of the pharmacy departments located in her stores.

18. In Ms. Proctor's jurisdiction, she encountered staffing issues where employees in the pharmacy department were constantly calling out and pharmacists would be the only ones working in the department.

19. These call outs resulted in early closures of the pharmacy and significant delays of customers receiving their prescriptions.

20. On January 15th, 2022, one of her locations only had a pharmacist working in the pharmacy department and had a heavy stream of customers. Ms. Proctor went to assist the pharmacist, also calling in other technicians to help.

21. However, Defendant's operating system that manages patient's prescriptions could only by accessed by pharmacists.

22. Ms. Proctor, a supervisor, and certified pharmacy technician accessed the Defendant's operating system so she could assist by performing pharmacy technician duties.

23. Ms. Proctor was written up for accessing the system. In her rebuttal she reemphasized that it is impossible for district managers to ensure that pharmacists are following Defendant's processes when they can't access the system that houses vital information.

24. On January 24th, 2022, another location was having similar staffing issues and was impossibly behind on filling prescriptions with the number of staff available.

25. The pharmacist and other technicians working that day agreed to work with Ms. Proctor until 2 a.m. to get as caught up as they could.

26. Ms. Proctor instructed everyone to put all 3-day-old prescriptions on hold to be available within the next 24-48 hours and to fill the remaining number. This process was known as a "clean up."

27. While Ms. Proctor was capping prescriptions filled by a robotic filler, Hidey a pharmacist and participant in Defendant's Emerging Leaders Program went into the operating system and intentionally deleted over 400 prescriptions instead of placing them on hold.

28. This was directly against Ms. Proctor's instructions and grounds for immediate termination as it can drastically interrupt patient care.

29. Ms. Proctor was completely unaware that Hidey deleted prescriptions until February 1st, 2022, when she reported to a meeting with upper management to discuss what occurred January 24.

30. When Hidey was asked by upper management why he'd deleted the prescriptions, he falsely reported that Ms. Proctor instructed him to do so, leading them to set up an impromptu meeting with her on February 1st "regarding how clean ups go."

31. In Ms. Proctor's meeting with HR she denied directing Hidey to delete prescriptions, informed HR that she carried out a proper "clean up" and that there were other witnesses present.

32. Defendant declined to investigate this matter by speaking with other witnesses and instead immediately terminated Ms. Proctor's employment.

33. This action was a deliberate and intentional act to remove Ms. Proctor because of her sex and age, and in retaliation for protesting age and sex discrimination against other staff.

34. Hidey a younger male employee was not disciplined nor terminated for deleting prescriptions but instead was promoted by Defendant.

35. Ms. Proctor was replaced by a younger male employee that had substantially less experience in this field and with Defendant.

36. Wright, Ms. Proctor's supervisor and regional manager also made it clear that he had an agenda to fill his team with all of his favorite people which over time became clear was younger men.

37. Wright made comments to his staff that he was proud of terminating all but one district manager, who were all generally older, speaking to who he'd plan to keep and who he wasn't when making store visits.

38. Ms. Proctor was the only female on his team, was the oldest, and the most tenured.

39. Being the only woman on the team, Ms. Proctor was excluded from team bonding activities and her input was not considered when making team plans.

40. Wright, acting on behalf of Defendant, illegally terminated Ms. Proctor.

41. Prior to Ms. Proctor's termination she opposed Wrights' discriminatory comments and behavior by complaining to upper management and HR.

42. Further, Wright was aware that Ms. Proctor complained about his colleague Rogers who was her direct supervisor before Wright.

43. Ms. Proctor protested two incidences where Rogers made discriminatory statements about older employees.

44. One instance was while on a road trip to one of their sites, Ms. Proctor vouched for one of the highest performing pharmacists in the company whom Rogers commented that he didn't know what good he was going for Defendant because he was so old, he could hardly move.

45. The other was when someone on Ms. Proctor's team applied for Defendant's Emerging Leaders Program, both Rogers and another talent acquisition person stated that they did not know why this woman was applying because she looked like she was near the end of her career. This comment was based solely on age and not on any indication from the applicant that there was a plan on leaving or retiring soon.

46. Rogers was aware that Ms. Wright complained to HR about his discriminatory behavior because Rogers was required to include HR in his communication with Ms. Proctor.

47. Despite Ms. Proctor's complaints about Rogers, Defendant allowed Rogers to continue supervising her and to place her on a performance improvement plan in retaliation for her complaints.

48. Ms. Proctor was the second ranked district leader in the region and had not received any discipline prior to her complaining Defendant's illegal acts.

49. Defendant had a pattern and practice of discrimination as they were only accepting younger males into their Emerging Leaders Program.

50. Defendant harassed and created a hostile environment for female employees and older employees by refusing to continue granting them credentials to Defendant's RX software.

51. This was done to make it more difficult for them to complete their duties and push them out of employment.

52. However, Defendant allowed Wright and Rogers, two male employees who were not licensed with Kansas or Missouri state pharmacy licensing boards to have access to their RX system.

53. Ms. Proctor complained of this discriminatory behavior to Defendant and to Missouri and Kansas state boards.

## COUNT I:
## AGE DESCRIMINATION HARRASMENT
## AND RETALIATION IN VIOLATION OF AGE THE ADEA

54. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

55. Ms. Proctor and other older staff were treated differently than younger staff.

56. Ms. Proctor's age was a motivating factor in Defendant's decision to terminate her employment.

57. Ms. Proctor was replaced by a younger less qualified employee.

58. Ms. Proctor reported multiple instances of maltreatment towards Defendant's employees because of their age.

59. This treatment came in negative comments, discouragement, distance, desocialization, and isolation.

60. Ms. Proctor as well as other older staff were not considered for certain positions, not given the tools needed to complete assignments, and were not given the same privileges as younger staff.

61. This treatment and Defendant's discriminatory ideas negatively impacted hiring, firing, and promotion.

62. This was the case in Ms. Proctor's situation as was other, older district leaders.

63. Additionally, Ms. Proctor was replaced by a young, male in his thirties that was far less experienced both in working for Defendant and in qualifications and accomplishments for and in the job.

64. Ms. Proctored was unfairly disciplined, treated negatively, and terminated in retaliation for complaining and protesting illegal age discrimination.

WHEREFORE, Ms. Proctor prays for judgment against Defendant on Count I of here complaint, for a finding that she has been subjected to unlawful age discrimination, harassment, and retaliation in violation of ADEA and for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and front pay, including the value of fringe benefits, costs

expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT II:
## HOSTILE ENVIROMENT IN VIOLATION OF THE ADEA

65. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

66. Ms. Proctor and other older staff were treated differently than younger staff.

67. Ms. Proctor's age was a motivating factor in Defendant's decision to terminate her employment.

68. Ms. Proctor was replaced by a younger less qualified employee.

69. Ms. Proctor reported multiple instances of maltreatment towards Defendant's employees because of their age.

70. This treatment came in negative comments, discouragement, distance, desocialization, and isolation.

71. Ms. Proctor as well as other older staff were not considered for certain positions, not given the tools needed to complete assignments, and were not given the same privileges as younger staff.

72. This treatment and Defendant's discriminatory ideas negatively impacted hiring, firing, and promotion.

73. This was the case in Ms. Proctor's situation as was other, older district leaders.

74. The Defendant's discriminatory and retaliatory behavior was severe and pervasive enough that the work environment became abusive and intimating.

75. Additionally, Ms. Proctor was replaced by a young, male in his thirties that was far less experienced both in working for Defendant and in qualifications and accomplishments for and in the job.

76. Proctored was disciplined unfairly disciplined, treated negatively, and terminated in retaliation for complaining and protesting illegal age discrimination.

WHEREFORE, Ms. Proctor prays for judgment against Defendant on Count II of her complaint, for a finding that she has been subjected to unlawful hostile environment in violation

of the ADEA, and for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

**COUNT III**
**SEX DISCRIMINATION HARRASMENT AND RETALIATION**
**IN VIOLATION OF TITLE VII**

77. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

78. Ms. Proctor and other female staff were treated differently than male staff.

79. Ms. Proctor was the only female on Wright's leadership team.

80. Wright made it clear that this was an intentional act and that Ms. Proctor only could occasionally "hang" because she wasn't "one of the boys."

81. Wright made it clear his preference was to work with men and preferred the women he worked with acted like men.

82. Wright denied Ms. Proctor the right to a fair investigation while acting on behalf of Defendant and ultimately, illegally terminated her based on his preferential and discriminatory practices.

83. Ms. Proctor's sex was a motivating factor in Defendant's decision to terminate her employment.

84. Ms. Proctor was replaced by a male less qualified employee.

85. Ms. Proctor reported multiple instances of maltreatment towards Defendant's employees because of their sex.

86. This treatment came in negative comments, discouragement, distance, desocialization, and isolation.

87. Ms. Proctor as well as other female staff were not considered for certain positions, not given the tools needed to complete assignments, and were not given the same privileges as younger staff.

88. Additionally, Ms. Proctor was replaced by a male in his thirties that was far less experienced both in working for Defendant and in qualifications and accomplishments for and in the job.

89. Proctored was disciplined unfairly disciplined, negatively, and terminated in retaliation for complaining and protesting illegal sex discrimination.

90. Ms. Proctor only started to receive low performance ratings after she made the complaints regarding Rogers comments on age.

91. Ms. Proctor was following policy in her complaints and had a duty to protect herself and those she supervised on behalf of Defendant.

92. Ms. Proctor was due a safe and just working environment free of discrimination and retaliation for opposing such practices.

93. Wright knew of Ms. Proctor's previous complaints; however, he also made it clear that his authority and preferences superseded the law.

94. He exemplified this in his statements to Ms. Proctor regarding others' termination, and ultimately in her own termination where he did not investigate the claims he was making, nor did he terminate the one truly responsible.

WHEREFORE, Ms. Proctor prays for judgment against Defendant on Count III of her complaint, for a finding that she has been subjected to unlawful sex discrimination, harassment and retaliation in violation Title VII of the Civil Rights Act of 1964 and for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, back pay and front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

**COUNT V**
**HOSTILE ENVIRMENT IN VIOLATION OF TITLE VII**

95. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

96. Ms. Proctor and other female staff were treated differently than male staff.

97. Ms. Proctor was the only female on Wright's leadership team.

98. Wright made it clear that this was an intentional act and that Ms. Proctor only could occasionally "hang" because she wasn't "one of the boys."

99. Wright made it clear his preference was to work with men and preferred the women he worked with acted like men.

100. Wright denied Ms. Proctor the right to a fair investigation while acting on behalf of Defendant and ultimately, illegally terminated her based on his preferential and discriminatory practices.

101. Ms. Proctor's sex was a motivating factor in Defendant's decision to terminate her employment.

102. Ms. Proctor was replaced by a male less qualified employee.

103. Ms. Proctor reported multiple instances of maltreatment towards Defendant's employees because of their sex.

104. This treatment came in negative comments, discouragement, distance, desocialization, and isolation.

105. Ms. Proctor as well as other female staff were not considered for certain positions, not given the tools needed to complete assignments, and were not given the same privileges as younger staff.

106. This treatment and Defendant's discriminatory ideas negatively impacted hiring, firing, and promotion.

107. This was the case in Ms. Proctor's situation as was other, female district leaders.

108. The Defendant's discriminatory and retaliatory behavior was severe and pervasive enough that the work environment became abusive and intimating.

109. Additionally, Ms. Proctor was replaced by a male in his thirties that was far less experienced both in working for Defendant and in qualifications and accomplishments for and in the job.

110. Proctored was disciplined unfairly disciplined, treated negatively, and terminated in retaliation for complaining and protesting illegal sex discrimination.

WHEREFORE, Ms. Proctor prays for judgment against Defendant on Count IV of her complaint, for a finding that she has been subjected to a hostile environment in violation Title VII of the Civil Rights Act of 1964 and for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable

relief, back pay and front pay, including the value of fringe benefits, costs expended, reasonable attorneys' fees and expert fees and expenses, pre-judgment and post judgment interest, and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Demand is hereby made for trial by jury in this case.

Respectfully submitted,

By: LAW OFFICE OF STEPHEN R. WILLIAMS, LLC

/s/ Stephen R. Williams
Stephen R. Williams     #59416
4520 Main Street, Suite 700
Kansas City, MO 64111
Office: 816.286.6047
Fax: 816.756.1999
stephen@srwilliamslaw.com

ATTORNEY FOR PLAINTIFF